UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GENE J. FRISCH,    Case No. 15-cv-926-pp

        Plaintiff,

v.

ALLIANCEONE RECEIVABLES
MANAGEMENT, INC.,

        Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13)**

Plaintiff Gene J. Frisch, representing himself, filed a complaint against defendant AllianceOne Receivables Management, Inc., alleging that the defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*, by placing unsolicited automatically-dialed telephone calls to his cellular phone between January 8, 2013 and February 14, 2013. Dkt. No. 1. The plaintiff alleges the defendant's calls related to its efforts to collect a debt from the plaintiff which he did not owe. Id. at 2. The parties have filed cross-motions for summary judgment. The court will deny the plaintiff's motion and grant the defendant's motion, because the record evidence establishes that the plaintiff cannot show, even making all reasonable inferences in his favor, that the defendant used an automated dialer to place the calls in question.

1

## I. BACKGROUND

The plaintiff alleged that from January 2013 through March 2013, the defendant placed "at least" twenty-four calls to the plaintiff's cell phone. Dkt. No. 1 at 2; Dkt. No. 1-2 at 1-5. He alleged that he'd never had a relationship with the defendant, and that the defendant placed these calls without his consent. Dkt. No. 1 at 2.

The defendant appears to concede that it placed thirty-six calls to the plaintiff's cell phone number. Dkt. No. 21 at 5. The defendant indicates that the plaintiff "apparently obtained a phone number previously owned by a debtor and the defendant was seeking contact with that debtor" by making those calls. Dkt. No. 20 at 1.

The issue is *how* the defendant placed those calls. The plaintiff alleges that the defendant made the calls using an "Automatic Dial Announcing Device," or "ADAD," in violation of the TCPA. Dkt. No. 15 at 1. The defendant agrees that it has an automated dialing system—a "predictive dialing system"—but that none of the thirty-six calls it placed to the plaintiff's cell phone were made with that system. Dkt. No. 21 at 6. Instead, the defendant states that each of the calls was "made the old-fashioned way" – one of the defendant's agents manually "dialed the numbers, waited for the line to ring, and stayed on the line until the call went to a voice mail, or otherwise terminated the call." Dkt. No. 26, at 2-3.

2

## II. STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, Omnicare, Inc. v. UnitedHealth Grp., Inc., 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. Carmichael v. Vill. of Palatine, 605 F.3d 451, 460 (7th Cir. 2010); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing the motion must then "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

## III. ANALYSIS

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] or an artificial or

3

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. §227(b)(A). An "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1).

If, therefore, the defendant used an ATDS (the plaintiff calls it an ADAD) to place calls to the plaintiff, it violated §227(b)(A). If the defendant did not use an ATDS, the calls did not violate the statute. The defendant asserts that it did not use an ATDS to call the plaintiff and, despite the plaintiff's allegations and arguments to the contrary, the record evidence does not demonstrate a genuine dispute of material fact on this question.

In support of the defendant's motion for summary judgment, it filed the declaration of John Tutewohl, the defendant's Vice President of Business Analytics, dkt. no. 22, along with call logs reflecting the defendant's calls to the plaintiff's cell number, and recordings of some of those calls, dkt. nos. 22-1 and 22-2. The Tutewohl declaration explains that Tutewohl has personal knowledge of the defendant's relevant business practices and methods, "including its telephone systems." Id., ¶3. Tutewohl states that during the time relevant to this case, the defendant "used two separate methods to contact consumers by telephone: (1) calls made *manually* directly by agents at [the defendant]'s call center; and (2) calls made by [the defendant]'s predictive dialing system," which is an automated dialing system. Id., ¶10. The defendant's records document each call placed to the plaintiff's cell phone

4

number and the system used to make each call. Id., ¶8. Tutewohl explained that both the defendant's manual telephone calling system and its predictive dialing system use "the Ontario Systems collection platform, called 'FACS' integrated with its calling solution Guaranteed Contacts (GC)." Dkt. No. 28, ¶10. Tutewohl goes on to say, however, that the GC calling solution didn't store *phone numbers*, so the computer wouldn't be able to use that system to randomly, or sequentially, call telephone numbers. Id., ¶11. Rather, it generated a list of *accounts*, which then had to be reviewed by a human agent to determine whether the defendant needed to call the owner of that account. Id. at ¶12.

According to Tutewohl, the defendant has "scrubbing software" that identifies numbers associated with cell phones, then "mandates" that the defendant's employees make calls to such numbers "*manually*, meaning that they obtain the number from their file and actually dial the number . . . ." Id., ¶9. If one of the defendant's employees determined that a call to the cell phone of an account holder was warranted by the circumstances of the account, "[the call] was manually placed to the consumer by either dialing the consumer's phone number using the keypad on the agent's computer or using the computer mouse to point and click on a telephone number that was displayed on the computer screen . . . ." Id., ¶12. Manually dialing a telephone number "required four components i.e., a live calling agent, the agent's computer, the server, and the Guaranteed Contacts calling solution and the process of dialing had to be initiated by the calling agent making a decision to call the consumer

5

and then taking action to cause the number to be dialed." Id., ¶14. Tutewohl states that his review of the records confirmed that the defendant's agents manually placed each of the thirty-six calls to the plaintiff's cell phone. Id., ¶16.

As an initial matter, the plaintiff objects to Tutewohl's declaration on the grounds that it contains legal conclusions. The court disagrees. The court has reviewed Tutewohl's seven-page affidavit; it does not contain any legal conclusions. It contains only factual statements.

Substantively, the plaintiff insists that the defendant did not manually dial his cell phone number (as the Tutewohl declaration states). He asserts that the process used by the defendant to dial the plaintiff's cell phone number "is not manual dialing. It is preview dialing utilizing FACS and the Guaranteed Contacts autodialer." Dkt. No. 39, ¶10. He also argues that the defendant did not use the Ontario Systems Manual Contact System for calls it placed to him, "because [the Ontario Systems Manual Contact System's] development and marketing postdates the calls in this case." Dkt. No. 35 at 2.

In support of these arguments, the plaintiff relies on screen shots from his cell phone's call log and documents that the plaintiff argues reflect that a telephone number that called the plaintiff's cell phone is associated with the defendant's automated dialing system. Dkt. No. 1, Exs. 3, 4; Dkt. No. 17, Ex. 10; Dkt. No. 39, Ex. 11. The plaintiff contends that these documents constitute evidence demonstrating the defendant called him using an ATDS, because the defendant has registered an autodialer with the Texas Public Utility

6

Commission that shares the same telephone number from which the plaintiff received the defendant's calls on his cell phone. Dkt No. 15, ¶¶1-9.

He also provided an affidavit, dkt. no. 17, and a declaration, dkt. no. 36 at 1-2. In both documents, he claims to have "personal knowledge" of certain facts, but the information he provides comes from sources other than himself. For example, in the declaration, he states that he has "personal knowledge" of certain facts. Id., ¶2. He then lists four URLs, and the titles of the pages located at those URLs. Id., ¶3. After listing these page addresses, the plaintiff then explains that he "read that the PDFs . . . on Ontario Systems website to be in regard to liability under the TCPA and I read their position on why the Manual Contact System is not in violation of the TCPA." He also states that he "saw diagrams and read that separate data controls and voice paths are used for manually dialing versus automatic dialing." Id., ¶4. He also read "that Ontario Systems Manual Contact System generates 'Manual Dial' on the Account Notes in manual mode, employs scrubbing software for cell phones and make audio recordings." Id., ¶5.

The defendant responds that the court cannot consider any of these materials as evidence on summary judgment because the plaintiff did not file them in an admissible form. Dkt. No. 41. Fed. R. Civ. P. 56(c)(2) permits a party to object that the evidence "cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(4) requires that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is

7

competent to testify on the matters stated." "To be admissible on summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence." Pryor v. City of Chicago, 726 F. Supp. 2d 939, 943-44 (N.D. Ill. 2010) (interpreting former Rule 56(e)) (citing Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 496 (7th Cir. 2006) and Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987)).

The defendant argues that Exhibits 3 (a July 18, 2015 ADAD Report from the Public Utility Commission of Texas, Dkt. No. 1-2 at 7) and 4 (a July 24, 2012 copy of the defendant's ADAD Registration, Dkt. No. 1-2 at 10) to the plaintiff's complaint are not admissible. They argue that the two exhibits are not self-authenticating government records, and that (a) the plaintiff's affidavit does not aver that he is in possession of the certified copy of Exhibit 4, and (b) his affidavit does not show that he has personal knowledge that the information contained in these documents is true and accurate. Dkt. No. 41, 1-4. Similarly, the defendants contend that Exhibit 10 (a CD containing documents the plaintiff purportedly retrieved from Ontario Systems, LLC's website) contains hearsay, is not authenticated, and lacks foundation to be admissible. Id. at 2-3. Exhibit 11 consists of written discovery responses in a different case (Norman v. AllianceOne Receivables Management, Inc., 14-cv-5930 (N.D. Ill.), discussed further below), which the defendants maintain are irrelevant here. Id. at 2. Finally, the defendants argue that the plaintiff's second declaration does not respond to or contradict Tutewohl's declaration, and

contend that the information in it is inadmissible because it consists of unauthenticated hearsay about what the plaintiff allegedly read on third-party websites. Id. at 2-3.

The court agrees that there are evidentiary problems with the evidence the plaintiff has presented. Even if the documents were admissible, however, the plaintiff still would fall short of showing a genuine dispute as to whether the defendant actually called him using an ATDS. The Tutewohl declaration, which is uncontroverted, established that the defendant followed a manual process each time it called the plaintiff's cell phone number. Dkt. No. 28, ¶16. The plaintiff's evidence, even if admissible, shows only that the defendant has the *capability* to use an automated predictive dialing system—a fact the defendant does not dispute. The fact that the defendant has the ability to use an automated predictive dialing system--even one that may use the same outbound telephone number as the defendant used to contact the plaintiff-- does not create a genuine issue as to whether the defendant used that system to call the plaintiff. Id., ¶21. The Tutewohl declaration confirms that the numbers available for use by the defendant's predictive dialing system "are equally available to use in manually dialing calls as was obviously done in this case," and Tutewohl asserts, under penalty of perjury, that none of the calls were placed to the plaintiff automatically. Id., ¶¶16, 21.

The plaintiff cites to Norman v. AllianceOne Receivables Mgmt., 637 F. App'x 214 (7th Cir. 2015) in support of his arguments. In Norman, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the

defendant. In that case, as here, the defendant filed "a declaration from the company's Vice President of Business Analytics and a log of the calls to Norman's phone to show that he was not autodialed." Id. at 215. The plaintiff in Norman submitted evidence which, even if it had been admissible, would have established only "that the company's capabilities include autodialers, but not that it used that capability always or even often, let alone in cases like Norman's." Id. The court held that, "[w]ith the call log showing that AllianceOne manually called Norman, and no contrary evidence about those calls in the record, the district court correctly granted summary judgment. No reasonable jury could conclude from this evidence that an autodialer called Norman." Id. (citing Ira Holtzman, C.P.A. v. Turza, 728 F.3d 682, 685 (7th Cir. 2013) (no material dispute requiring trial in TCPA suit when corporate representative explained in detail how records were compiled and plaintiff failed to demonstrate that any of the records were inaccurate)).

Rather than supporting the plaintiff's arguments, Norman supports the defendant's position. The defendant here supported its motion for summary judgment with record evidence demonstrating that it manually dialed each of the calls placed to the plaintiff's cell phone number. The plaintiff has not presented any evidence that the defendant actually used its predictive dialer to call the plaintiff via an ATDS, and in response to the defendant's motion, he failed to create a genuine dispute on the issue. The defendant's evidence that it placed each call to the plaintiff manually is uncontroverted.

10

The court finds that the defendant has supported its motion for summary judgment with admissible evidence demonstrating that the calls placed by the defendant's employees to the plaintiff's cell phone were dialed manually. Accordingly, the court will deny the plaintiff's motion for summary judgment, and will enter summary judgment in favor of the defendant because there is no evidence in the record on which a reasonable jury could conclude that the defendant violated the TCPA by using an automated dialer to call him.

### IV. CONCLUSION

The court concludes that there is no dispute as to any genuine issue of material fact, and the defendant is entitled to judgment as a matter of law. Accordingly, the court **DENIES** the plaintiff's motion for summary judgment, Dkt. No. 13, **GRANTS** the defendant's motion for summary judgment, Dkt. No. 19, and **DISMISSES** the plaintiff's complaint in its entirety. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief

from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 3rd day of January, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge